# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| BRETT A. VANDEWALKER,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. C13-2083-CJW<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff, Brett A. Vandewalker, seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Social Security disabled adult child benefits, disability insurance benefits (DIB), and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Vandewalker contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision is affirmed.

## I. BACKGROUND

Vandewalker was born on May 14, 1990. He completed high school in special education classes. AR 24. The alleged onset date of his disability is May 13, 2008. AR 21. Although he had worked off and on as a fast food worker since May 13, 2008, the amount of this work does not rise to the level of substantial gainful activity. AR 22.

Vandewalker contends that he was disabled due to borderline intellectual functioning, attention deficit hyperactivity disorder (ADHD), bipolar disorder, oppositional defiant disorder (ODD), anxiety disorder, personality disorder, and mild

developmental expressive language disorder. AR 22 et al. Vandewalker's claims were denied initially and on reconsideration. AR 75-76, 80-88, 78-79, 91-94. He then requested a hearing before an Administrative Law Judge (ALJ). ALJ Marilyn Hamilton conducted a video hearing on February 23, 2010 (the Hearing), AR 15-31, 582-98, and issued a decision denying VandeWalker's claim on April 30, 2010. AR 19 *et seq*.

Vandewalker sought review by the Appeals Council, which denied review on July 12, 2011, AR 3-8, leaving the ALJ's decision as the final decision of the Commissioner. On September 8, 2011, Vandewalker filed his first complaint in this court seeking review of the Commissioner's decision. No. 6:11cv2056-EJM (N.D. Iowa). On August 20, 2012, this court remanded this case to the agency for further consideration of the record. ALJ John E. Sandboothe held a supplemental hearing on August 13, 2013, AR 542, 563-579. On August 29, 2013, the ALJ again denied benefits.

On December 7, 2013, Vandewalker filed his second complaint seeking judicial review (Doc. 1). Prior to completion of briefing, the Commissioner moved to remand this case back to him under Sentence 6 of the Social Security Act, because new and material evidence was adduced after the administrative proceedings. Evidently, the new evidence was that exhibits 23F and 24F from the last hearing had been lost. (Doc. 11). Another supplemental hearing was held. By that time, Vandewalker was working full time as a fast food worker. AR 718, 750. The ALJ again denied benefits. AR 714. The case returned to this court on October 21, 2015. (Doc. 13). On March 8, 2016, with the consent of the parties (Doc. 23), the Honorable Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. The parties have now briefed the issues, and the matter is fully submitted.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the

claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's Residual Functional Capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. ALJ'S FINDINGS

The ALJ made the following findings:

1. Born on May 14, 1990, the claimant had not attained age 22 as of May 13, 2008, the alleged onset date (20 C.F.R. §§ 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since May 13, 2008, the alleged onset date (20 C.F.R. §§ 404.1574 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: borderline intellectual functioning; attention deficit hyperactivity disorder (ADHA); bipolar disorder; oppositional defiant disorder; anxiety disorder; personality disorder; and mild developmental expressive language disorder. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

5

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)).

5. After careful consideration of the entire record, the ALJ finds that the claimant has the residual functional capacity to perform a full range of work at the exertional levels but with the following nonexertional limitations: he can do only simple, routine, repetitive work with no contact with the public, and only occasional contact with co-workers and supervisors. He cannot perform production-rate pace work, nothing like fast-paced assembly–line jobs. Additionally, the claimant should avoid concentrated exposure to noise and to hazards such as heavy machinery and unguarded heights. There should be no requirement to drive on the job, to do math, to read instructions, or to write reports.

6. At all times relevant to this decision, based on the residual functional capacity above, the claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on May 14, 1990, and was six years old on the alleged disability onset date. He attained age 18 on May 13, 2008 (just prior to his protective filing date), and is now age 19. This is defined as a younger individual age 18-49 (20 C.F.R. §§ 404.1563 and 416.963)).

8. The claimant has a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964.)

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. §§ 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 13, 2008, through the date of this decision (20 CFR §§ 404.350(a)(5), 404.1520(g) and 416.920(g)).

AR 19-32.

### IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health &*

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Vandewalker argues the ALJ's decision is flawed for three reasons:

1. The ALJ Failed to Give "Good Reasons" for Discounting the Opinion of Treating Psychiatrist Dr. Marvin Piburn.

2. The ALJ Failed to Adequately Assess the Work-Related Limitations Imposed by Examining Psychologist Dr. Ellie Snavely.

3. The ALJ Improperly Evaluated the Opinion of Therapist Richard Anfinson.

The court will address these three arguments separately below.

### A. RFC Determination - Applicable Standards

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. At Step Four, the claimant has the burden to prove his RFC and the ALJ determines the RFC based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

### 1. The ALJ Properly Weighed the Opinion of Dr. Piburn

Plaintiff asserts that the ALJ failed to properly consider the opinion of Dr. Piburn. It is not the role of this Court to reweigh the evidence presented to the ALJ or to try the

9

issues de novo. *See, Howe v. Astrue*, 499 F.3d 835, 839 (8th Cir. 2007). "If substantial evidence supports the ALJ's decision, [the court] will not reverse it merely because substantial evidence would have supported a contrary outcome or because [the court] might have decided the case differently in the first instance." *Id*. Instead, "[t]he ALJ is charged with the responsibility of resolving conflicts among medical opinions." *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008) (citing *Wagner v. Astrue,* 499 F.3d 842, 848 (8th Cir. 2007)); *see also Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (citing *Bentley v. Shalala*, 52 F.3d 784, 785-87 (8th Cir. 1995)).

The ALJ discussed the opinion of Dr. Piburn and found it inconsistent with plaintiff's activities and with the doctor's own treatment records. AR 724-26. *See Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.") (citing *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009)); *Medhaug*, 578 F.3d at 815.

Dr. Piburn reported that plaintiff had marked limitations of activities of daily living. Plaintiff was, at times, living on his own or at the Job Corps dormitory and performed his own personal care and household chores. AR 724. The ALJ agreed with the treatment notes showing moderate social limitations – specifically, conflicts with family members and with a roommate. AR 724-25. The ALJ rejected Dr. Piburn's opinion regarding frequent deficiencies in concentration, persistence, or pace, noting that plaintiff had successfully completed high school and the Job Corps program and had been working at substantial gainful activity since November 2011. AR 724. The ALJ noted that Dr. Piburn's opinion that plaintiff had repeated episodes of decompensation was unsupported by any evidence and demonstrated an incorrect understanding of the legal meaning of that phrase. AR 725. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C)(4) (defining episodes of decompensation).

The parties also disagree on whether plaintiff's past satisfactory performance relied on him being in a "structured setting," which may not always be available going forward. The regulations indicate that a structured setting is meant to be a hospital, halfway house, board and care facility, or a similar setting, which may be provided in a home. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(F) (defining structured setting). Although plaintiff is correct that a home *can* be a structured environment, there is no evidence to show that plaintiff's home was such, simply because he lived with his parents who encouraged him to take his medication. The evidence does not show plaintiff's home was similar to a hospital or facility setting in its level of structure. In the instant case, plaintiff had lived outside of his home while at Job Corps, and later while living with a roommate, and had been able to maintain his job during that period. Dr. Piburn's statement that plaintiff's satisfactory past performance may have relied on his being in a structured setting is inconsistent with the evidence of plaintiff's actual past activities. *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014). The ALJ properly considered and weighed the opinion of Dr. Pliburn.

### 2. *The ALJ Properly Assessed the Limitations of Dr. Snavely*

The ALJ did give some weight to the opinion of Dr. Snavely. AR 390-95, 726. To the degree that he did not, the ALJ found that Dr. Snavely's opinion was heavily reliant on the subjective statements of plaintiff and his mother, which the ALJ had found not entirely credible. AR 726. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014).

The ALJ found that some of Dr. Snavely's statements were inconsistent with plaintiff's actual functioning. AR 726. Overall, the ALJ thoroughly discussed the medical opinions and other statements of record and articulated proper bases for the weight given to those opinions. The court agrees that the ALJ has provided a sufficient

basis for which of Dr. Snavely's opinions he accepted, and which he did not, the latter being largely those based only on the subjective statements of plaintiff and his mother.

### *3. The ALJ Properly Evaluated the Opinion of Therapist Anfinson*

The ALJ also discussed and weighed the opinion of therapist Richard Anfinson. AR 380-85, 726. The ALJ noted that Mr. Anfinson had seen plaintiff on only a few occasions since 2011 – during the relevant time period. AR 726. The ALJ also noted that his opinion was entitled to less weight because he is not an "acceptable medical source." AR 726. *See* Social Security Ruling 06-03p, 2006 WL 2329939 at *2 (S.S.A. 2006) (citing 20 C.F.R. § 404.1527(d) (current subsection (c)); *see Tindell*, 444 F.3d at 1005 ("By definition then, the controlling weight afforded to a 'treating source' 'medical opinion' is reserved for the medical opinions of the claimant's own physician, psychologist, and other acceptable medical source."). The ALJ gave the opinion some weight because it was inconsistent with the evidence as a whole – as discussed above in relation to the opinion of Dr. Piburn. All of these bases are appropriate for discrediting the opinion of Mr. Anfinson.

There is sufficient evidence to support the ALJ's decision, even though, frankly, there may be enough evidence on the other side to have supported an opposing view had the ALJ so held. The Court should "disturb the ALJ's decision only if it falls outside the available 'zone of choice.' A decision is not outside that 'zone of choice' simply because [the court] may have reached a different conclusion had [it] been fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006.)." This decision was within the ALJ's zone of choice.

In short, the ALJ provided sufficient reasons, supported by substantial evidence in the record as a whole, for his assessment of Vandewalker's lack of a disability. As such, the ALJ's determination is entitled to deference.

## *VI. CONCLUSION*

For the reasons set forth herein, and without minimizing the seriousness of plaintiff's impairments, the court **affirms** the Commissioner's determination that Vandewalker was not disabled. Judgment shall be entered against Vandewalker and in favor of the Commissioner.

**IT IS SO ORDERED** this 17th day of June, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa